IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WILLIAM CURCIO and | § | |
| BRANDI WARE | § | MDL NO. 2543 |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | HON. JESSE M. FURMAN |
| | § | |
| GENERAL MOTORS, LLC, | § | C.A. NO. 18-CV-6993 |
| | § | |
| *Defendant.* | § | COMPLAINT |
| | § | |
| | § | JURY TRIAL DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT**

COMES NOW Plaintiffs, William Curcio and Brandi Ware, (hereinafter the "Named Plaintiffs" or "Plaintiffs"), through the undersigned counsel, who respectfully show as follows:

**PRELIMINARY STATEMENT**

1.     The Named Plaintiffs' causes of action are brought solely against GENERAL MOTORS, LLC ("New GM").  The Named Plaintiffs do not assert any causes of action against General Motors Corporation ("Old GM").

2.     Any references to General Motors Corporation, Old GM, or pre-sale order conduct in this Complaint are for background and reference purposes, and to establish the genus of Old-to-New employees' knowledge of the safety defects described herein as well as said employees' wrongful, negligent actions and inactions with respect to the same.  Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement ("Purchase Agreement"), New GM acquired certain Old GM assets and product liabilities, including product liability for crashes involving Old GM vehicles causing personal injury, loss of life, or property damage.  New GM also acquired knowledge of Old GM's activities and the defective airbag systems identified herein,

via the mind of the employees, officers, managers, as well as via books, and records obtained and/or acquired as a result of the Purchase Agreement and subsequent Sale Order, as further defined by the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al.*, *f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG).  Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM.  Further, as identified therein, the Plaintiffs have claims for crashes involving an Old GM vehicle ("GM vehicles") that caused personal injuries and/or property damage and New GM is, therefore, liable to the Named Plaintiffs.

**PARTIES**

3.      Plaintiff William Curcio is and was at all times relevant hereto, a resident of Maurepas, Louisiana.

4.      Plaintiff Brandi Ware is and was at all times relevant hereto, a resident of Simpson, Louisiana.

5.      Plaintiffs assert claims against Defendant General Motors LLC ("New GM") for personal injuries stemming from an incident which occurred on August 4, 2017, involving Plaintiff Curcio's 2001 Cadillac Deville (VIN 1G6KD54Y61U225532).

6.      The Named Plaintiffs' personal injury claims involve a Defective Vehicle, specifically a 2001 Cadillac Deville.  Defendant New GM is a Delaware limited liability company. On July 10, 2009, New GM acquired substantially all of the assets and assumed product liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code.  New GM assumed product liabilities of Old GM, which filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 1, 2009.  Pursuant to the Agreement and other orders of the Bankruptcy Court, Defendant New GM purchased the assets of Old GM and hired many, if not most, of Old GM's employees including, on information and belief, most of the same senior-level

management, officers, and directors.  New GM also acquired Old GM's designs, tools, inventory, books, records, and its key contracts, among other essential assets.

7.      Under the Purchase Agreement, New GM assumed liability for crashes after the closing date of the Purchase Agreement involving Old GM vehicles causing personal injury, loss of life, or property damages.

8.      New GM also assumed product liabilities of Old GM, including certain statutory requirements:

> From and after the Closing, Purchaser [New GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by Seller [Old GM].

9.      In addition, New GM set forth that:

> From and after the Closing, Purchaser [New GM] shall be responsible for the administration, management and payment of all Liabilities arising under (i) express written warranties of Sellers [Old GM] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (ii) Lemon Laws.

10.     At all times relevant to the claims in this lawsuit, Old GM and New GM were in the business of developing, manufacturing, and marketing cars throughout the United States generally, and specifically in the Plaintiffs' state of citizenship.  New GM has a network of authorized retailers that sell its vehicles and parts throughout the United States.  New GM maintains its principal place of business at 300 Renaissance Center, Detroit, Michigan.

**JURISDICTION**

11.     This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and the Plaintiffs and New GM are citizens of different states.

**FACTUAL BACKGROUND**

**General Background**

12.     Plaintiff William Curcio was the driver of a 2001 Cadillac Deville (VIN 1G6KD54Y61U225532).   On August 4, 2017, Plaintiff Curcio was driving on LA 1026 in Livingston Parrish, Louisiana, while Plaintiff Brandi Ware was in the front passenger seat. Suddenly and unexpectedly, another vehicle crossed into their lane and struck the front of the vehicle, causing Plaintiffs to be severely injured.   The accident resulted in frontal damage to the vehicle and the airbags failed to deploy.   Clearly, there was a defect in the ignition switch and airbags as the vehicle was subject to recall 14V355000 related to ignition switch failures and the airbags failed to deploy.

13.     An automaker should never place profits above safety and should never conceal from consumers or the public any defects that exist in its vehicles.   New GM's Vehicle Safety Chief, Jeff Boyer, recently proclaimed that "Nothing is more important than the safety of our customers in the vehicles they drive."   *GM Announces New Vehicle Safety Chief*, *available at* http://democrats.energycommerce.house.gov/sites/default/files/documents/Testimony-Barra-GM-Ignition-Switch-Recall-2014-4-1.pdf.

14.     Indeed, the first priority of a car manufacturer should be to ensure that its vehicles are safe and, in particular, have working airbag systems, passenger restraint systems, and other safety features that can prevent or minimize the threat of death or serious bodily harm in a collision. In addition, a car manufacturer must take all reasonable steps to ensure that once a vehicle is

running, it operates safely, and its critical safety systems (such as its airbag systems and passenger restraint systems) work properly until such time as the driver shuts down the vehicle. Moreover, a manufacturer that is aware of a dangerous design defect that causes its airbags or passenger airbag systems not to function properly must promptly disclose and remedy such defects.

15.     To date, Old GM and New GM have designed, manufactured, marketed and/or sold millions of automobiles installed with defective airbag systems and passenger restraint systems in General Motors brand vehicles.

16.     In addition, or in the alternative, Old GM and New GM have sold millions of vehicles suffering from the other, similar, potentially life-threatening major defects. As will be shown at trial, all the knowledge of Old GM with respect to these defects was inherited by or is imputable to New GM within the meaning of the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG).

17.     On July 9, 2009, the United States Bankruptcy Court approved the sale of substantially all of Old GM's assets to New GM which retained the vast majority of Old GM's senior and management level executives and engineers who knew that Old GM had manufactured and sold millions of vehicles afflicted with an airbag system and/or passenger restraint system defect. Those employees' knowledge regarding said defect is imputed to New GM, whenever obtained.

18.     On or around the day of its formation as an entity, New GM also acquired, *inter alia*, the knowledge of the contents of Old GM's "files" and company "documents". To that end, New GM acquired notice of the safety-related defects contained in Old GM's files, including numerous engineering reports, investigative reports, failure analyses, technical service bulletins,

and other documentation concerning the common defects in the airbag systems/passenger restraint systems described herein.

19.    Defendant New GM also had ongoing obligations under the Safety Act to monitor both Old GM and New GM vehicles on the road, to make quarterly reports to NHTSA, and to maintain all relevant records for five years.  Defendant New GM explicitly accepted Safety Act responsibilities for Old GM vehicles in §6.15 of the Sale Agreement through which it acquired substantially all of Old GM's assets.

20.    The Safety Act and related regulations require the quarterly submission to NHTSA of "early warning reporting" data, including incidents involving death or injury, claims relating to property damage received by the manufacturer, warranty claims paid by the manufacturer, consumer complaints, and field reports prepared by the manufacturer's employees or representatives concerning failure, malfunction, lack of durability, or other performance issues. 49 U.S.C. §30166(m)(3); 49 C.F.R. §579.21.  Manufacturers must retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  49 C.F.R. §576.5 to §576.6.

21.    The Safety Act further requires immediate action when a manufacturer determines or should determine that a safety defect exists.  *United States v. General Motors Corp.,* 574 F. Supp. 1047, 1050 (D.D.C. 1983).  A safety defect is defined by regulation to include any defect that creates an "unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle" or "unreasonable risk of death or injury in an accident." 49 U.S.C. §30102(a)(8).  Within five days of learning about a safety defect, a manufacturer must notify NHTSA and provide a description of the vehicles potentially containing the defect, including

"make, line, model year, [and] the inclusive dates (month and year) of manufacture," a description

of how these vehicles differ from similar vehicles not included in the recall, and "a summary of all

warranty claims, field or service reports, and other information" that formed the basis of the

determination that the defect was safety related. 49 U.S.C. §30118(c); 49 C.F.R. §573.6(b)-(c).

Then, "within a reasonable time" after deciding that a safety issue exists, the manufacturer must

notify the owners of the defective vehicles. 49 C.F.R. §577.5(a), §577.7(a). Violating these

notification requirements can result in a maximum civil penalty of $15,000,000. 49 U.S.C.

§30165(a)(1).

22.    Defendant New GM used several processes to identify safety issues, including the

Transportation Recall Enhancement, Accountability and Documentation ("TREAD") database and

Problem Resolution Tracking System ("PRTS"). The TREAD database, used to store the data

required for the NHTSA early warning reports, was the principal database used by Old and New

GM to track incidents related to Old and New GM vehicles. The database included information

from (i) customer service requests; (ii) repair orders from dealers; (iii) internal and external

surveys; (iv) field reports from employees who bought Old and New GM vehicles and from

Captured Test Fleet reports; (v) complaints from the OnStar call center; and (vi) a database

maintained by the Old and New GM legal staff to track data concerning complaints filed in court.

A TREAD reporting team would conduct monthly database searches and prepare scatter graphs to

identify spikes in the number of accidents or complaints related to various Old and New GM

vehicles. The PRTS is a database that tracks engineering problems identified in testing,

manufacturing, through warranty data and through customer feedback. The PRTS process

involves five steps: identification of the issue, identification of the root cause, identification of a

solution, implementation of the solution, and feedback.

23.     Because the same employees carried out the TREAD Act obligations at Old GM and Defendant New GM, they not only retained the knowledge they acquired at Old GM – they were in fact required to do so.  This further supports the propriety of imputing the knowledge of Old GM employees to New GM, even where that knowledge stems in part from their performance of the same or similar roles at Old GM.

24.     In setting forth the knowledge and conduct of Old GM in connection with the defects set forth herein, Plaintiffs allege that New GM is liable for the actions of Old GM only with respect to the Products Liability claims for compensatory damages, which are an Assumed Liability.  With respect to Plaintiffs' independent claims, Plaintiffs do not seek to hold Defendant New GM liable for the actions of Old GM.  Instead, the knowledge and conduct of Old GM is generally important and relevant because it is imputed to Defendant New GM under governing principles of agency law.

25.     Numerous Old GM employees carried knowledge of airbag system and passenger restraint system defects with them into their continued employment at New GM after the July 10, 2009 Bankruptcy Sale.

26.     New GM received customer complaints of airbags failing to deploy in a frontal collision in the make and model of Plaintiffs' vehicle, including the following:

- THE CONTACT OWNS A 2001 CADILLAC DEVILLE. THE CONTACT RECEIVED A RECALL NOTICE FOR NHTSA CAMPAIGN NUMBER: 14V355000 (ELECTRICAL SYSTEM). WHILE DRIVING 25 MPH, THE VEHICLE STALLED AND CAUSED THE CONTACT TO CRASH THE VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. TWO PASSENGERS WERE INJURED AND RECEIVED MEDICAL ATTENTION. THE VEHICLE WAS REPAIRED. THE FAILURE MILEAGE WAS 60,000. (03/27/2014)

- THE CONTACT OWNS A 2001 CADILLAC DEVILLE. THE CONTACT STATED THAT WHILE DRIVING 35 MPH, SHE CRASHED INTO ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED SHOULDER AND HEAD INJURIES, THE PASSENGER SUSTAINED HEAD AND NECK INJURIES, AND BOTH REAR SIDE PASSENGER'S SUSTAINED NECK AND BACK INJURIES. ALL OF THE OCCUPANTS REQUIRED MEDICAL

ATTENTION. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC AND WAS RULED AS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 131,000. (01/02/2014)

- THE CONTACT OWNS A 2001 CADILLAC DEVILLE. THE CONTACT STATED THAT WHILE REVERSING, THE VEHICLE STALLED WITHOUT WARNING CAUSING THE VEHICLE TO CRASH INTO A LIGHT POST. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS NOT FILED AND NO INJURIES WERE SUSTAINED. THE VEHICLE HAD NOT BEEN REPAIRED. THE FAILURE OCCURRED ON ANOTHER OCCASION WHERE THE CONTACT CRASHED INTO A GARAGE. THE VEHICLE WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 14V355000 (ELECTRICAL SYSTEM). THE MANUFACTURER WAS NOTIFIED OF THE ISSUE. THE FAILURE MILEAGE WAS UNAVAILABLE. (05/01/2013)

- THE CONTACT OWNS A 2001 CADILLAC DEVILLE. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 35 MPH, THE BRAKES MALFUNCTIONED AND FAILED TO STOP THE VEHICLE WHEN THE BRAKES WERE ENGAGED. THE CONTACT MENTIONED THAT THE VEHICLE STALLED CAUSING THE CONTACT TO CRASH INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED OF THE INCIDENT AND NO INJURIES WERE REPORTED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE CONTACT RECENTLY RECEIVED A RECALL NOTIFICATION FOR NHTSA CAMPAIGN NUMBER 14V355000 (ELECTRICAL SYSTEM). THE FAILURE MILEAGE WAS 80,000. (12/31/2012)

- AIR BAGS DID NOT DEPLOY AT A HEAD ON IMPACT AT 38 MILES PER HOUR. DRIVER INJURED. (10/31/2011)

- THE CONTACT OWNED A 2001 CADILLAC DEVILLE. WHILE DRIVING APPROXIMATELY 20 MPH, ANOTHER VEHICLE CRASHED INTO THE FRONT DRIVER SIDE OF THE CONTACT'S VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT MENTIONED THAT THE DRIVER SUSTAINED NECK AND BACK INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED AND TOWED TO REPAIR SHOP. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 40,000. (09/05/2011)

- WHILE DRIVING CONSUMER HIT A GUARDRAIL AND WAS INJURED. FRONT DRIVER'S AIR BAG DID NOT DEPLOY. PLEASE PROVIDE ANY FURTHER INFORMATION.

- I WAS INVOLVED IN A HEAD ON CRASH WITH MY 2001 CADILLAC DTS. NEITHER THE DRIVER NOR PASSENGER AIRBAG DEPLOYED. (12/18/2008)

- THE CONTACT OWNS A 2001 CADILLAC DEVILLE. WHILE DRIVING 55 MPH, THE VEHICLE HYDROPLANED AND CRASHED INTO SEVERAL TREES AT FULL

SPEED. NONE OF THE AIR BAGS DEPLOYED. THE CONTACT INJURED HER HEAD AND BACK DURING THE CRASH. THE VEHICLE HAS NOT BEEN DIAGNOSED BY THE DEALER. A POLICE REPORT WAS FILED. THE CURRENT AND FAILURE MILEAGES WERE 29,000. UPDATED 09/01/09. THE CONSUMER ALSO STATED THE ABS DID NOT OPEARTE AS IT WAS DESIGNED. (12/11/2008)

27.    New GM received customer complaints of driver and passenger airbag failures in front end collisions.  GM issued one recall regarding the ignition switch on June 20, 2014.

28.    Throughout the years in which it received these complaints, Old and New GM marketed GM brand vehicles as safe. For example, in a section called "Safety," Old GM's Chevrolet website stated:

**OUR COMMITMENT**

"Your family's safety is important to us. Whether it's a short errand around town or a cross-country road trip, Chevrolet is committed to keeping you and your family safe – from the start of your journey to your destination. That's why every Chevrolet is designed with a comprehensive list of safety and security features to help give you peace of mind."

29.    Similarly, Old GM promoted its Saturn vehicle line with television advertising tag lines like, "Putting people first," and, "Saturn. People First." Saturn's print ad campaign featured advertisements with statements such as the following: "Need is where you begin. In cars, it's about things like reliability, durability and, of course, safety. That's where we started when developing our new line of cars." In sum, in order to increase sales, Old GM touted the safety of its vehicles, and New GM did nothing to correct the false representations of safety to the millions of vehicle owners whose cars were affected by defects in its airbag system and passenger restraint systems. Further, throughout the existence of both Old and New GM, GM dealerships continued to sell "certified pre-owned cars" that still had defective airbag and passenger restraint systems. New GM, which profited indirectly from these sales, certified the safety of these vehicles to the public, explaining that the certification process involved testing of over a hundred components, including the airbag and passenger restraint systems. This safety certification was made despite many of the

affected vehicles still having the defective airbag and passenger restraint systems. As a result, many owners and users of the affected vehicles purchased and drove the vehicles in reliance upon these safety representations.

**AIRBAG/PASSENGER RESTRAINT SYSTEM DEFECTS**

30.    Plaintiffs' 2001 Cadillac Deville was equipped with driver and front passenger frontal airbags.  However, the airbags did not deploy during the subject collision even though there was a frontal impact.  Plaintiffs were severely injured as a result of the collision.

31.    Plaintiffs' injuries were also caused by the failure of the airbags to deploy in this collision.

32.    The defects in the design, manufacture and/or assembly of the 2001 Cadillac Deville's safety components and the negligence of GM as described herein, resulted in the frontal airbags not deploying.

33.    Prior to February 1, 2016, Old GM and/or New GM designed, built, assembled, manufactured, tested, advertised, marketed, and distributed the "Cadillac", which contained design defects when it left the possession of Old GM.

34.    At all times material hereto, GM had a duty to use reasonable care to design, manufacture, market, modify and/or sell the Subject Vehicle and its Airbag System/Passenger Restraint System such that they would be reasonably safe for their intended purposes and pass without objection throughout the trade or industry.

35.    Notwithstanding this duty, GM carelessly, recklessly and negligently designed, manufactured, and sold the Subject Vehicle and its Airbag System/Passenger Restraint System such that there was an inherent defect in the Subject Vehicle, namely the Airbag System/Passenger

Restraint System was subject to failure and did fail to operate as intended and designed at the time and place of the collision described herein.

36.    GM carelessly, recklessly and negligently failed to adequately test and inspect the Airbag System/Passenger Restraint System to determine whether prospective and foreseeable owners, users, drivers and occupants of the Subject Vehicle would be exposed to an unreasonable risk of physical harm during foreseeable automobile collisions of sufficient force to activate the Airbag System/Passenger Restraint System.

37.    All damages described herein were caused by the design, manufacture, marketing and distribution of a defective motor vehicle, both generally and in the following respects:  (a) the vehicle was not crashworthy; the vehicle was defective, unsafe and inadequate for the use for which it was made and intended to be used, including foreseeable collisions; the vehicle was not designed and equipped with alternative, technologically feasible and safer components which would have been capable of minimizing the risk of significant injury associated with frontal collisions and, therefore, the risks of harm outweighed the benefits of the selected defectively designed airbag system; the vehicle was defective, unsafe and inadequate for the use in which it was made and intended because it was equipped with an unsafe and defectively designed airbag system/passenger restraint system because in foreseeable collisions the airbag would not deploy in a necessary and timely manner; the vehicle was defective and unsafe and inadequate because it did not include necessary and adequate warnings that the airbag would fail to deploy under foreseeable circumstances; the vehicle was defective, unsafe and inadequate because the airbag system/passenger restraint system did not perform in a manner that an ordinary consumer would expect under the facts that will be established at trial; and the airbag system/passenger restraint system designed and selected for this model vehicle was inadequately and unsafely designed so

12

that the airbags did not deploy in frontal collision event that warranted airbag deployment to protect the occupants.

38.     Because of its defective design, manufacture and production, especially the airbag system in the 2001 Cadillac Deville, this vehicle was inherently dangerous in the event of foreseeable frontal collisions.

39.     GM breached its duties owed to Plaintiffs in that it failed to recall and retrofit Plaintiff's 2001 Cadillac Deville.

40.     Plaintiffs were not aware of and could not have reasonably discovered the defective condition and dangerous nature of the Subject Vehicle and its Airbag System.

## CLAIMS AGAINST GENERAL MOTORS, LLC BROUGHT BY NAMED PLAINTIFFS UNDER LOUSIANA LAW

## COUNT 1 – Negligence

41.     The Named Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

42.     Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability for crashes involving Old GM vehicles causing personal injury, loss of life or property damages. New GM also acquired knowledge of Old GM's activities and the Airbag System/Passenger Restraint System defect, and other serious defects, via the mind of the employees, officers, managers, as well as via books and records obtained and/or acquired as a result of the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order. Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM.  Further, as identified therein, certain Named Plaintiffs have claims for crashes involving Old

GM vehicles that caused personal injury, loss of life or property damage and New GM is therefore liable to the Named Plaintiffs.

43.    Old GM and New GM owed Named Plaintiffs a duty to design, manufacturer, fabricate, assemble, inspect, market, distribute, sell, and/or supply products in such a way as to avoid harm to persons using them such as the Named Plaintiffs.

44.    Old GM and New GM owed the Named Plaintiffs a duty to detect known safety defects in GM vehicles.

45.    Old GM and New GM owed the Named Plaintiffs a duty, once it discovered the Airbag System/Passenger Restraint System defect, to provide thorough notice of the defect, including a warning that the defective vehicles should not be driven until an appropriate repair procedure is developed and performed.

46.    Old GM and New GM owed the Named Plaintiffs a duty, once it discovered the Airbag System/Passenger Restraint System defect, to ensure that an appropriate repair procedure was developed and made available to drivers.

47.    Old GM and New GM knew that their customers, such as the Named Plaintiffs, expect that the company will employ all reasonable efforts to detect safety defects, warn drivers of their existence, and develop and make available an appropriate repair procedure.

48.    Old GM and New GM efforts to discover, provide notice of, and provide repair procedures for safety related defects exist for the benefit of the Named Plaintiffs and other drivers of GM vehicles.  Old GM and New GM was aware that by providing maintenance and repair information and assistance, including through its authorized dealerships, Old GM and New GM had a responsibility to the Named Plaintiffs and other drivers to take the reasonable measures listed above.

49.    By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damages, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiffs were among the product liability of Old GM assumed by New GM.

50.    Independent of any failures by Old GM as described herein, New GM breached its duties to the Named Plaintiffs by failing to provide appropriate notice of and repair procedures for the Named Plaintiffs' Defective Vehicle.  In doing so, New GM departed from the reasonable standard of care required of it.

51.    It was foreseeable that if the New GM did not provide appropriate notice and repair procedures for the Defective Vehicles, the Named Plaintiffs and other drivers would be endangered.

52.    The Named Plaintiffs' injuries were reasonably foreseeable to Old GM and New GM.

53.    The Named Plaintiffs could not through the exercise of reasonable diligence have prevented the injuries caused by Old GM and New GM's negligence.

54.    Old GM's and New GM's acts and omissions, when viewed objectively from the actor's standpoint, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.  Old GM and New GM nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

55.    As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

## COUNT II - Strict Liability

56.     The Named Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

57.     Old GM and New GM, at all times relevant to this action, were engaged in the design, testing, manufacture, distribution, and sale of automobiles, including the Defective Vehicles.

58.     The Defective Vehicles were expected to and did reach users and consumers without substantial change in the condition in which it was sold.

59.     The Defective Vehicles were in a defective condition creating risk of harm to a user or a consumer, including Named Plaintiffs.

60.     The defects set forth herein caused the Named Plaintiffs' injuries.

61.     Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability for crashes involving Old GM vehicles causing personal injury, loss of life or property damage. As identified therein, the Named Plaintiffs have claims for crashes involving Old GM vehicles that caused personal injury, loss of life or property damages and New GM is therefore liable to the Plaintiffs.

62.     These injuries and losses were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles in a defective condition for which it is strictly liable to the Named Plaintiffs pursuant to Restatement (Second) of Torts § 402A.  Alternatively, the injuries and losses were caused by Old GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles in a defective condition for which New GM is

strictly liable to the Named Plaintiffs pursuant to Restatement (Second) of Torts § 402A because these product liabilities were assumed by New GM.

63.     These injuries were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles without proper and adequate warnings, instructions, and/or guidelines for safe use for which it is strictly liable to the Plaintiffs.  Alternatively, these injuries were caused by Old GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles without proper and adequate warnings, instructions, and/or guidelines for safe use for which New GM is strictly liable to the Plaintiffs because these product liabilities were assumed by New GM.

64.     By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damage, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiffs were among the product liabilities of Old GM assumed by New GM.  Independent of any failures by Old GM as described herein, New GM breached its duties owed to the Named Plaintiffs as described herein.

65.     Plaintiffs would show in the alternative that there was a manufacturing defect in Plaintiff's vehicle concerning the airbag system/passenger restraint system.

66.     As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

**COUNT III- Failure To Warn/Marketing Defect**

67.     Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement, New GM expressly assumed liability for post-sale accidents involving Old GM vehicles causing personal injury, loss of life, or property damages. New GM also acquired knowledge of Old GM's activities and the defective Airbag System/Passenger Restraint System /Control Modules via the mind of the employees, officers, managers, books and records obtained and/or acquired as a result of the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order. Thus, the acts or omissions of Old GM are part of the foundation for the liability assumed by New GM. Further, Plaintiffs have claims for a post-sale accident involving a New GM vehicle that caused personal injury or property damage and New GM is therefore expressly liable to Plaintiffs for Old GM's negligence. New GM is also liable to Plaintiffs for its independent, post-sale negligence.

68.     Old GM was negligent in designing, manufacturing, and providing warnings for the Plaintiff's vehicle, as set forth in the paragraphs above (Airbag System/Passenger Restraint System Defects). Old GM acted unreasonably in manufacturing and selling vehicles with design, manufacturing, and informational defects and concealing such defects from Plaintiffs, the public, and NHTSA.

69.     In addition, Old GM's failure to notify NHTSA and Old GM vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

70.     Old GM had a duty to ensure that its vehicles were reasonably safe to operate and did not contain defective components, and to produce vehicles with appropriate warning

instructions. When Old GM learned that the Plaintiff's vehicle was defective, it had a continuing

duty to warn Plaintiffs of the existence of the defect, including after the original sale of the vehicle.

71.    New GM was also negligent in providing warnings about Plaintiff's vehicle and

unreasonably concealing the design, manufacturing, and informational defects that New GM knew

existed in Old GM vehicles. New GM had a continuing duty to monitor Old GM vehicles for

safety-related defects and warn Plaintiffs, the public, and NHTSA about safety- related defects in

Old GM vehicles.   This duty is based on the direct and continuing  relationship between New GM

and the owners of Old GM vehicles. Among other things, New GM had a statutory duty to warn

owners of Old GM vehicles, including Plaintiffs, of safety defects and did, in fact, warn owners of

Old GM vehicles, including Plaintiffs, of the safety defects (though the warning arrived years later

than it should have and unreasonably minimized the risk of harm.

72.    In addition, New GM's failure to notify NHTSA and Subject Vehicle owners of

safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577

constituted negligence per se. These statutes and regulations were enacted for the protection and

safety of the public.

73.    Thus, independent of any failures by Old GM and New GM as described herein,

New GM breached its duties to Plaintiffs by failing to provide appropriate notice of and repair

procedures for the Airbag System/Passenger Restraint System defects in Plaintiff's vehicle. In

doing so, New GM departed from the reasonable standard of care required of it.

74.    Old GM's and New GM's negligence proximately caused the injuries and damages

sustained by Plaintiffs, as set forth herein. New GM's negligence in manufacturing and selling a

vehicle containing design and manufacturing defects and Old GM's and New GM's negligence in

failing to adequately warn Plaintiffs about known defects in their vehicles and in violating the

statutes and regulations that required Old GM and New GM to recall Plaintiff's vehicle for safety-related defects proximately caused Plaintiff's inability to avoid the crash made the basis of this lawsuit that left them severely injured or killed.

75.     New GM is liable for compensatory damages based on Old GM's conduct and based on New  GM's own independent conduct.  New GM is further liable for fair and reasonable damages for pain and suffering, medical expenses, and/or damages as may be determined by the Court or the jury, as well as costs, expenses, and reasonable attorneys' fees.

**DAMAGES**

76.     The Named Plaintiffs pray for damages against the Defendant in a sum of money in excess of the jurisdictional amount of Seventy-Five Thousand Dollars ($75,000.00) plus costs and any such other relief to be deemed just and equitable to which they are entitled.

77.     As a direct and proximate result of New GM's wrongful conduct, Plaintiffs has been (and continues to be) damaged in the form of: (a) past and future pain and suffering; (b) past and future physical impairment; (c) past and future physical disfigurement; (d) past and future mental anguish; (e) past and future loss of consortium and/or loss of services; (f) past and future loss of income and/or lost earning capacity; (g) past and future reasonable and necessary medical expenses; and (h) past and future loss of enjoyment of life' (i) loss of function; (j) prospective medical care and medication costs; and (k) property damage to his vehicle sustained in the crash.  All of the damages sustained by Plaintiffs were reasonably foreseeable by New GM, and exceed the minimum jurisdictional limits of this Court.  All conditions precedent to Plaintiffs' claims for relief have been performed and/or occurred.

78.     All of the damages sustained by Plaintiffs were reasonably foreseeable by New GM, and exceed the minimum jurisdictional limits of this Court.  All conditions precedent to Plaintiffs' claims for relief have been performed and/or occurred.

**PRE-JUDGMENT INTEREST AND POST-JUDGMENT INTEREST**

79.     Lastly, Plaintiffs are entitled to pre-judgment and post-judgment interest (to be determined).

**JURY DEMAND**

80.     The Named Plaintiffs request a trial by jury.

**PRAYER**

81.     For the foregoing reasons, the Named Plaintiffs pray that the Defendant be cited to appear and answer herein, and that upon final hearing of the cause, judgment be entered for the Plaintiffs against Defendant for actual damages, as alleged, together with pre-judgment interested (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which Named Plaintiffs may be entitled at law or in equity.

Dated: August 3, 2018

RESPECTFULLY SUBMITTED,

*/s/ Craig W. Carlson* _____
Craig W. Carlson
THE CARLSON LAW FIRM PC
100 E Centex Expressway
Killeen, Texas 76542
Phone: (254) 526-5688
Fax: (254) 526-8204
Email: ccarlson@carlsonattorneys.com

***Attorney for Plaintiffs***